IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

Assigned on Briefs December 17, 2019

## CHARLES TRAVIS MAPLES v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 110183      Steven W. Sword, Judge**

### No. E2019-00475-CCA-R3-PC

The petitioner, Charles Travis Maples, appeals the denial of his petition for post-conviction relief, which petition challenged his 2013 Knox County Criminal Court jury convictions of three counts of the sale of cocaine in a drug-free school zone. In this appeal, the petitioner claims, as he did below, that he is entitled to post-conviction relief because he was deprived of the effective assistance of counsel at trial. Discerning no error, we affirm.

### Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

John C. Barnes, Knoxville, Tennessee, for the appellant, Charles Travis Maples.

Herbert H. Slatery III, Attorney General and Reporter; Nicholas W. Spangler, Assistant Attorney General; Charme P. Allen, District Attorney General; and Philip Morton, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

Originally charged with four counts each of the sale or delivery of 0.5 grams or more of cocaine in a drug-free school zone and one count each of the possession of marijuana, the possession of drug paraphernalia, and evading arrest, the petitioner was convicted by a Knox County Criminal Court jury of two counts each of the sale or delivery of 0.5 grams or more of cocaine in a drug-free school zone and one count each of the sale or delivery of less than 0.5 grams of cocaine in a drug-free school zone. *See State v. Charles Travis Maples*, No. E2016-00589-CCA-R3-CD, slip op. at 1-2 (Tenn. Crim. App., Knoxville, Dec. 5, 2016). "The trial court merged the convictions of the delivery of cocaine into the corresponding charges of the sale of cocaine" and imposed a

total effective sentence of 25 years' incarceration, 15 years of which the court ordered to be served at 100 percent. *Id.*, slip op. at 3. This court affirmed the convictions and the accompanying 25-year sentence on appeal, *see generally id.*, and the supreme court denied the petitioner's application for permission to appeal.

> The evidence adduced at trial established that at the behest of Officer [Michael] Geddings, [Frances Charlene Brady] arranged to purchase cocaine from the petitioner on three separate occasions. On each occasion, Officer Geddings searched Ms. Brady, provided her with recording equipment and money with which to make the purchases, and then drove her to an apartment in the Tillery Ridge Apartments on Merchants Drive. During the October 24, 2012 transaction, Ms. Brady purchased 0.62 grams of crack cocaine from the defendant in exchange for $100. An audio recording of this transaction was played for the jury. During the November 1, 2012 transaction, Ms. Brady purchased 0.47 grams of crack cocaine from the defendant in exchange for $100. A video recording of this transaction was played for the jury. During the November 5, 2012 transaction, Ms. Brady purchased 0.78 grams of crack cocaine in exchange for $100. A video recording of this transaction was played for the jury.

*Id.*, slip op. at 4.

The petitioner timely filed a pro se petition for post-conviction relief, alleging, among other things, that he was deprived of the effective assistance of counsel. The post-conviction court initially appointed counsel to represent the petitioner, but the petitioner retained counsel in June 2018. In his amended petition for post-conviction relief, the petitioner alleged that his counsel performed deficiently by misinforming the petitioner about the admissibility of his prior convictions should he choose to testify at trial, by conceding the petitioner's guilt of the lesser included offense of simple possession or casual exchange, by failing to object to the admission of prior bad act evidence, by failing to request a mistrial based upon the admission of prior bad act evidence, by failing to request a curative or limiting instruction regarding the prior bad act evidence, by waiving certain potential appellate issues by omitting them from his motion for new trial, and by failing to raise certain issues on appeal.

At the January 17, 2019 evidentiary hearing, trial counsel testified that he was retained to represent the petitioner. He said that he obtained discovery materials

-2-

from the State and that he reviewed the materials with the then-incarcerated petitioner. He could not recall how many times he had visited the petitioner but insisted that he had done so because "I always do." Counsel said that he was sure that he had discussed a trial strategy with the petitioner, again because it was his practice to do so in every case. He explained that it would have been his strategy to attempt to "knock down" the charged offenses to simple possession or casual exchange. Although he had no specific recollection of sharing this strategy with the petitioner, he said, "I'm sure I did. That's what I usually do." He said that he could not recall the petitioner's reaction but that he "assum[ed] it was favorable" because he could not remember having argued with the petitioner despite having "represented him for years."

Trial counsel said that, in keeping with his strategy, he cross-examined the witness who testified about the distance from the location of the offenses to the school and questioned the credibility of the informant. He acknowledged that he "probably did" mention to the jury the theory that the petitioner had done nothing more than casually exchange drugs with the informant "because I wanted to give them the alternative, as opposed to zone and for resale, this could be a case that could be casual exchange or simple possession." Counsel admitted that he conceded the petitioner's guilt of simple possession or casual exchange during closing argument, saying that he wanted the jury to view the petitioner "as someone who has a problem, . . . and that makes him an addict, not a dealer."

Counsel could not recall which of the petitioner's prior convictions had been listed in the State's notice of impeachment and could not recall the outcome of the hearing on his motion to exclude those convictions. He said that he would not be surprised to learn that the trial court had ruled that only one of the two convictions was admissible, but he could not recall whether he had discussed the ruling with the petitioner. Counsel also had no specific recollection of having discussed with the petitioner his right to testify at trial but said that it was his practice to discuss the issue with all of his clients and to address the prospect of impeachment with prior convictions during that discussion. Trial counsel said that he had "worked with [the petitioner] on different cases over the years" and that the two "had a way of . . . getting along with each other and talking. Never had a problem communicating."

During cross-examination by the State, trial counsel said that he had been practicing law for 23 years and that the bulk of his practice was devoted to criminal defense work. He estimated that he had participated in more than 60 jury trials, including some where the death penalty was a potential punishment. Counsel agreed that video surveillance evidence showed at least one hand-to-hand exchange between the petitioner and the informant. He characterized the evidence of the petitioner's identity as the perpetrator as "fairly strong" and admitted that making identity an issue "would have

been very difficult." Instead, he focused on trying to establish that the petitioner had not actually sold the drugs to the informant and that the exchange did not actually take place within a drug-free school zone. He said that he attempted, via cross-examination, to discredit the mapping witness for the State. He acknowledged that he also attempted to depict the petitioner as a drug addict and to characterize the transaction between the petitioner and the informant as an exchange of drugs by two drug addicts. Counsel said that he felt comfortable, given his long relationship with the petitioner, in pursuing that strategy.

Trial counsel testified that he had concerns about the petitioner's testifying at trial, saying, "I didn't think he would come across very well to the jury." He said that keeping the petitioner "focused on what we were talking about . . . would have been a problem." He added, "I thought that the . . . [S]tate could probably tear him apart, basically." Counsel said that although he could not recall the specific discussion he had with the petitioner, he was certain that he had advised the petitioner not to take the stand. Counsel said that any such discussion would have included a discussion of the trial court's ruling on the admissibility of his prior convictions and acknowledged that, even though the court had determined that the petitioner's prior drug conviction would not be admissible, that ruling presupposed that the petitioner did not open the door to its admission.

The petitioner testified that trial counsel visited him "no more than three times" after being retained to represent the petitioner. He said that, during those meetings, counsel was "always making sure he got it right on what happened, what occurred that night, where the buys took place and stuff like that." The petitioner said that counsel did not show him any of the audio or video recordings that were played during the trial. He insisted that, although counsel "said he had pictures and stuff," the petitioner "never had that in my discovery." He maintained that he and counsel did not discuss potential witnesses or defense strategies. The petitioner said that, because this was his first time going to trial, he trusted that trial counsel "knew what he was doing." He claimed that counsel did not discuss lesser included offenses with him and specifically did not tell the petitioner that he intended to admit the petitioner's guilt of simple possession or casual exchange as part of his strategy at trial.

The petitioner admitted that he and counsel discussed his taking the stand at trial. He testified that counsel "told me don't -- don't testify, 'cause, you know, they could bring my -- my criminal history up, and he was telling me that ain't a good idea." He claimed that counsel went so far as to say that the State "could bring up my juvenile history" and "everything that -- that I ever been charged with, like drug related." He said that he was concerned that the State "could use everything." The petitioner admitted that he understood that he could have testified if he wanted to do so. He said that when,

-4-

during the *Momon* colloquy, counsel told him that the State could bring up "anything" he had done in the past, he understood that to mean "my juvenile history on back," including those cases that had been dismissed.

The petitioner testified that, on the day that the trial began, trial counsel visited him "in the bullpen" to tell him that the trial was to begin that day. According to the petitioner, he "didn't feel comfortable going in there with [trial counsel], and my mama was telling me she was going to hire another attorney. So, I was trying to fire him, but he was saying if your new attorney ain't here today, then the trial got to go on." He insisted that he "fire[d]" trial counsel "to his face" but admitted that he did not bring that to the attention of the court. He claimed that trial counsel went on with the trial despite the petitioner's telling him that he no longer wanted counsel to represent him. The petitioner reiterated that he "didn't feel comfortable with" trial counsel's representation because they "never really had a[n] understanding . . . with a strategy or anything."

During cross-examination, the petitioner insisted that he did not recall the trial court's ruling in open court that only his prior conviction of criminal impersonation could be used to impeach him, saying, "I was in and out. I wasn't really just -- really just focusing. I wasn't really thinking like -- I wasn't in my right state of mind, sir." The petitioner acknowledged that he had made the decision not to testify "[w]ay before" the trial "in one of the meetings that we had." He claimed, however, that, after the informant said "some things that I wanted to respond to," counsel told him, "'Don't get up -- just don't get up there.'" He conceded that he elected not to testify because he trusted counsel's advice on the issue but said, "I made the final decision."

The petitioner acknowledged that he was present at the preliminary hearing and that, as a result, he was aware of the charges against him as well as the basic facts supporting those charges. He said that counsel went over that information with him but "never broke it down."

During redirect-examination, the petitioner said that he was under the impression that the State would be permitted to inquire into his entire criminal history and that that impression affected his decision not to testify at trial. The petitioner said that he dropped out of high school in the ninth grade and could only read and write "a little bit." He acknowledged during recross-examination, however, that he was very familiar with the criminal justice system.

At the conclusion of the hearing, the trial court took the petition under advisement. In a written order denying post-conviction relief, the post-conviction court specifically accredited trial counsel's testimony and determined that the petitioner's testimony was not credible.

With regard to the petitioner's claim that trial counsel failed to adequately apprise him of which of his prior convictions could be used to impeach him should he testify at trial, the post-conviction court concluded that although trial counsel's statement on that issue during the *Momon* colloquy "was not well-worded and came across as an incorrect statement of law," in the context of the hearing as a whole, "the statement was not as misleading as it would appear." The court observed that the record clearly established "that both the court and [trial counsel] previously discussed the admissibility of the [p]etitioner's prior convictions" and that the court had "clearly ruled that the State would not be able to ask the [p]etitioner about his prior drug related conviction." The post-conviction court also noted that the petitioner had conceded "that he had decided not to testify 'way before trial.'" The court found that counsel had cautioned the petitioner against testifying due to counsel's belief that the petitioner would not fare well on the stand. The court concluded that, "in the context of the total record," trial counsel's statement during the *Momon* colloquy "did not amount to deficient performance." The post-conviction court also ruled that the petitioner had failed to establish prejudice flowing from the misstatement "because he had decided not to testify before the trial even began." The court found that, contrary to the petitioner's assertion "that this was a 'he-said, she-said' case, the drug sales were actually recorded and monitored by the police" and that the petitioner did not suggest "what he would have said during the trial, had he testified, that would likely have made a difference."

With regard to the petitioner's claim that structural error resulted from counsel's conceding the petitioner's guilt without the petitioner's permission, the post-conviction court accredited trial counsel's testimony that, although he could not recall their specific conversations on the issue, trial counsel was certain that "he would have discussed the strategy[,] which was to attack the school-zone claim and try to get the charges reduced to the lesser offense of casual exchange/simple possession." The court also found that the record supported counsel's assertion. The court found that, because

> the videos of the drug deals were the most significant evidence in this case[,] and [trial counsel] testified that he discussed this strategy with the [p]etitioner, it follows that the [p]etitioner was fully aware prior to trial that the defense strategy would not be to contest that the videos captured drug transactions, but that they were not within a school zone and were simply casual exchanges [between] two drug addicts.

The court concluded that "[t]he entire trial transcript supports this strategy" and that the petitioner "never voiced any objections until the post-conviction hearing."

-6-

As to the petitioner's claim that counsel pursued the strategy without the petitioner's permission, the post-conviction court found that conceding guilt to a Class A misdemeanor lesser included offense when the petitioner was charged with a Class A felony that required 100 percent service was far different than conceding guilt on a charged offense when an accused has "vociferously and affirmatively claimed innocence throughout the proceedings." The court also found that the petitioner's testimony that counsel did not discuss this strategy with him was not credible. The court concluded that trial counsel "formulated a rational defense strategy based upon the strong proof against the [p]etitioner." Based upon these findings, the court determined that no structural constitutional error occurred.

In this timely appeal, the petitioner reiterates his claim of ineffective assistance of counsel, claiming that counsel performed deficiently by failing to adequately apprise him of the admissibility of his prior convictions should he elect to testify and by admitting that the petitioner "was a drug dealer." He insists that these errors resulted in prejudice to his case and that, as a result, he is entitled to post-conviction relief. The State asserts that trial counsel did not perform deficiently and that, even assuming that counsel did perform deficiently, counsel's errors did not contribute to the petitioner's conviction when viewed in light of the overwhelming evidence of the petitioner's guilt.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

Before a petitioner will be granted post-conviction relief based upon a claim of ineffective assistance of counsel, the record must affirmatively establish, via facts clearly and convincingly established by the petitioner, that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must

-7-

show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When considering a claim of ineffective assistance of counsel, a reviewing court "begins with the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all significant decisions," *Kendrick v. State*, 454 S.W.3d 450, 458 (Tenn. 2015) (citing *Strickland*, 466 U.S. at 689), and "[t]he petitioner bears the burden of overcoming this presumption," *id.* (citations omitted). We will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

In our view, the record supports the denial of post-conviction relief.

First, trial counsel's accredited testimony established that he and the petitioner had discussed the petitioner's testifying prior to trial and that he had recommended that the petitioner not testify, noting his belief that the State "could probably tear him apart, basically." The petitioner confirmed that he and counsel had discussed the issue and that he had decided not to testify prior to trial. Additionally, as the post-conviction court observed, the petitioner offered no testimony at the evidentiary hearing that called into question the evidence of the petitioner's guilt. In consequence, even if trial counsel had performed deficiently in this regard, the record does not establish that the petitioner was prejudiced by that performance.

Second, trial counsel's accredited testimony established that, although he could not recall the specifics of their discussions, he discussed with the petitioner his strategy of trying to establish to the jury that the petitioner had engaged in, at most, a simple possession or casual exchange of cocaine with the informant. The record establishes that, despite the petitioner's cherry picking of quotes from the trial transcript, the overall thrust of the defense was that the petitioner was not, in fact, a drug dealer but was instead a user of drugs who occasionally exchanged drugs with other users as a means of supporting his own drug habit. Given that the three controlled buys were monitored in real time by the police and captured via recordings that were later played to

-8-

the jury, counsel's trial strategy was a reasonable one. This is not a situation, as suggested by the petitioner, where counsel disregarded the wishes of the petitioner and admitted the petitioner's guilt of the charged offenses. Instead, counsel pursued a reasonable trial strategy in the face of significant evidence of the petitioner's guilt that was designed to greatly reduce the petitioner's exposure. Under these circumstances, we cannot say that trial counsel performed deficiently. Moreover, no evidence suggests that the petitioner was prejudiced by this trial strategy. In light of the proof supporting the petitioner's convictions, counsel's decision to concede the petitioner's guilt of simple possession or casual exchange likely had no effect on the outcome of the trial.

Accordingly, we affirm the judgment of the post-conviction court.

_____
JAMES CURWOOD WITT, JR., JUDGE